IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TYREK SCALE,** : | |
| Petitioner, : | |
| : | |
| v. : | Civ. No. 19-5443 |
| : | |
| **DERRICK OBERLANDER, et al.,** : | |
| Respondents. : | |

# O R D E R

Tyrek Scale has filed counseled objections to Magistrate Judge Lloret's Recommendation that I deny his § 2254 Petition. (Doc. Nos. 21, 22); 28 U.S.C. § 2254. I will overrule the objections, adopt Judge Lloret's Report and Recommendation, and deny relief.

## I. BACKGROUND

In July 2014, Scale and codefendant Deshawn Newman were tried on first-degree murder charges in Philadelphia Common Pleas Court. Commonwealth v. Scale, CP-51-CR-0001230-2013 (Pa. Commw. Ct. Mar. 29, 2018) (unpublished). One juror refused to deliberate, resulting in a mistrial. (N.T. Apr. 13, 2015 5:5-6.) The other eleven jurors indicated that they would have convicted Scale and Newman. (Id. at 5:6-9.)

At his second trial in April 2015, a Philadelphia Common Pleas Court jury convicted Scale of first-degree murder, criminal conspiracy, carrying a firearm without a license, carrying a firearm on a public street in Philadelphia, possessing an instrument of crime, and fleeing from police. (Doc. Nos. 1, 21 at 5.) Scale was sentenced to a mandatory term of life imprisonment for murder. (Doc. No. 21 at 5.) The Superior Court affirmed. (Id.)

Scale filed a *pro se* petition for postconviction relief on October 17, 2017. See Post Conviction Relief Act, 42 Pa. C.S. § 9541 et seq.; (Doc. No. 21 at 5.) The PCRA Court appointed counsel, who filed an amended petition. (Id. at 6.) After the Court notified Scale of its intent to

dismiss his petition, he filed a *pro se* amended supplemental PCRA petition raising issues based on ineffective assistance of trial counsel. (Id.) The Court found that Scale had failed to develop his claims, which in any event were meritless. (Id.) The PCRA Court thus dismissed his petition; the Superior Court affirmed. (Id.)

On November 19, 2019, Scale filed the instant counseled § 2254 Petition, which Respondents oppose. (Doc. Nos. 1, 11.) Judge Lloret recommends denying relief. (Doc. No. 21.) Scale filed objections to the Report. (Doc. No. 22.) Respondents filed their response on January 19, 2022. (Doc. No. 28.)

## II.   LEGAL STANDARDS

I must review *de novo* those portions of the Report to which timely, specific objections have been filed. 28 U.S.C. § 636(b)(1)(C). I may "accept, reject, or modify, in whole or in part" Judge Lloret's findings or recommendations. Id.; Brophy v. Halter, 153 F. Supp. 2d 667, 669 (E.D. Pa. 2001). As to those portions to which no objections have been made, I must "satisfy [myself] that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's note to the 1983 amendment; see Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987) (explaining the district court's responsibility "to afford some level of review" when no objections have been made).

Before seeking federal habeas relief, state prisoners must exhaust their state court remedies. 28 U.S.C. § 2254(b). Moreover, federal courts usually will not review habeas claims that were not presented to the state court in the manner prescribed by its procedural rules. Wainwright v. Sykes, 433 U.S. 72, 81–82 (1977). "[I]f it is clear that the habeas petitioner's claims [would] now [be] procedurally barred under state law," the claims are exhausted but procedurally defaulted. Gray v. Netherland, 518 U.S. 152, 161–62 (1996). Accordingly, habeas petitioners usually must "give

the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). I may not consider a defaulted claim unless Petitioner shows either: (1) cause and prejudice; or (2) that the failure to consider the claim would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750; Cristin v. Brennan, 281 F.3d 404, 409 n.5 (3d Cir. 2002) cert. denied Cristin v. Wolfe, 527 U.S. 897 (2002).

I may grant habeas relief only if the state court's adjudication of Scale's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To warrant habeas relief, the state court's decision must be "objectively unreasonable;" I may not grant relief "merely because [I] conclude that the state court applied federal law erroneously or incorrectly." Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005); see also Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) ("[A] federal court may not overturn a state court decision . . . simply because the federal court disagrees with the state court."). I must give determinations by the Superior Court considerable deference; factual issues determined by a state court are presumed to be correct unless a petitioner rebuts this presumption by clear and convincing evidence. Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000).

### III.     OBJECTIONS

Scale originally raised five ineffectiveness claims, attacking trial counsel's failure to: (1) object when the Commonwealth introduced witness testimony relating to a fight the victim, Wali Patrick, had the day of his murder; (2) object to prejudicial testimony and a misleading characterization by the Commonwealth that implied the shooting was the result of a "turf war";

3

(3) meaningfully advise Scale of his right to testify and object to an inadequate colloquy during which Scale waived that right; (4) object to a Commonwealth expert witness' testimony describing the results a toxicology report which the witness had not prepared; and (5) conduct an appropriate investigation regarding the Commonwealth's proffered firearms expert testimony and lack of forensic evidence. (Doc. No. 1 at 34-52.)

Judge Lloret concluded that each of these claims is procedurally defaulted and without merit. (Doc. No. 21 at 11.) Scale objects that Judge Lloret should have excused the procedural default and granted relief on each substantive claim. (Doc. No. 22.) I will overrule the objections.

### A. Procedural Default

Although Scale acknowledges that his claims are defaulted, he argues that the defaults should be excused under Martinez because his PRCA counsel was ineffective. (Id.); Martinez v. Ryan, 566 U.S. 1 (2012). Under Martinez, Scale must demonstrate: (1) that the default was caused by ineffective assistance of state-post conviction counsel; and (2) that the "procedurally defaulted ineffective assistance of trial counsel claim has 'some merit.'" Workman v. Superintendent Albion SCI, 915 F.3d 928, 937 (3d Cir. 2019) (quoting Martinez, 566 U.S. at 9). Judge Lloret ruled that the underlying ineffectiveness claims have "some merit. (Doc. No. 21 at 12.)

An underlying ineffectiveness claim "has some merit" only if "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Workman, 915 F.3d at 938 (quoting Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)). Scale must thus show: (1) his attorney's actions were unreasonable under prevailing professional norms; and (2) but for that deficiency, there is a reasonable probability that the result of the proceedings would have been different. See Strickland v. Washington, 466 U.S. 668, 688 (1984). "The likelihood of

4

a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (citing Strickland, 466 U.S. at 693). Although the question of whether the underlying ineffectiveness claim "has merit" is "guided by the two-part Strickland analysis . . . [it] does not require full consideration of the factual or legal bases adduced in support of the claims." Preston v. Superintended Graterford SCI, 902 F.3d 365, 377 (3d Cir. 2018).

As I explain below, I agree with Judge Lloret that none of Scale's underlying ineffectiveness claims "has some merit." I thus will overrule Scale's objections.

**B.     Victim's Fight**

1.     Testimony of Pamela Hayward

Scale originally alleged that his trial counsel ineffectively elicited "prejudicial" testimony from Pamela Hayward, Mr. Patrick's mother. (Doc. No. 1 at 34-35.) Ms. Hayward testified that the morning of the shooting the victim said that "he had a fight at 15th and Lehigh." (N.T. Apr. 14, 2015 93:2-3.) Scale's counsel objected but was overruled. (Id. at 93:4-11.) On cross examination, counsel elicited from Ms. Hayward confirmation that the victim "never mentioned the name Tyrek Scale at all," and that she did not "know who was involved" in the fight. (Id. at 94:24-95:8.) Counsel then read Ms. Hayward's prior consistent statement that she had no information that Scale was involved in the fight. (Id. at 96:3-13.) Judge Lloret thus ruled that Ms. Hayward's testimony was not prejudicial because the cross examination confirmed that "the victim's statement to his mother . . . [did not] implicate Mr. Scale in any capacity." (Doc. No. 21 at 15.) Scale objects that Judge Lloret "failed to consider the prejudicial effect that counsel's cross examination had to have had on the jury" because his "hammering" on the issue emphasized the possibility that there might be additional evidence that was not presented. (Doc. No. 22 at 6.) I disagree.

5

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005) (quoting Strickland, 466 at 689). Where, as here, "the record does not explicitly disclose trial counsel's actual strategy . . . the presumption may only be rebutted through a showing that no sound strategy posited by the Commonwealth could have supported the conduct." Id. (citing Yarborough v. Gentry, 540 U.S. 1, 8 (2003)).

Here, the reasonableness of counsel's conduct is apparent. After his objection to Hayward's testimony was overruled, counsel helped Scale by eliciting Ms. Hayward's acknowledgement that Mr. Patrick never mentioned Scale. (See N.T. Apr. 14, 2015 94:24-95:8.) In his closing argument, trial counsel thus argued that the Commonwealth had failed to show any connection between Scale and the person with whom the victim had fought that morning. (N.T. Apr. 17, 2015 53:5-17.) Scale's argument that trial counsel was ineffective by eliciting "prejudicial" testimony during cross examination of Ms. Hayward is thus meritless. Accordingly, I will overrule Scale's objection.

        2.        Testimony of Detective Schmidt

Scale originally alleged that trial counsel ineffectively failed to object on Confrontation grounds to Detective David Schmidt's testimony regarding the fight described by Ms. Hayward. (Doc. No. 1 at 36-38.) Detective Schmidt testified that the Mr. Patrick's cousin, Khiry Hayward, told homicide detectives "about a fight that had happened at 15th and Lehigh between the decedent and someone named Fees earlier in the day," and that "Fees" lived at 1507 Oakdale Street. (N.T. Apr. 16, 2015 199:8-200:8.) Detective Schmidt testified that there was no indication that "Fees" was either Scale or his codefendant, and that Schmidt was unable to identify "Fees." (Id. at 199:19-200:24.) Judge Lloret ruled that: (1) because the Commonwealth did not introduce any statement

6

by Fees, Scale's Confrontation rights were not violated; and (2) Scale waived any Confrontation argument, which in any event was meritless. (Doc. No. 22 at 15.)

First, Scale "clarifies" that he does not assert that "his Confrontation Clause rights were violated because Fees was not produced," but rather that those rights were violated "when Khiry Hayward was not produced." (Doc. No. 22 at 3.) Judge Lloret found that Scale waived this argument because he raised it for the first time in his reply memorandum. (Doc. No. 21 at 15.) Scale nonetheless urges that his counseled Petition—which states that the Detective's testimony "related to" Fees, not that the statement was made "by Fees"—includes this issue. (Doc. No. 22 at 4 n.1) Again, I disagree. In his Petition, Scale argues that trial counsel should have raised a Confrontation objection because "[w]hile it is true that 'Fees' did not testify, his statement was effectively presented to the jury through Khiry Hayward's statement." (Doc. No. 1 at 38.) Scale then argues that his trial counsel "failed to object to admission of this evidence when 'Fees' had not been called to testify." (Id. at 39.) At no point in his Petition does Scale assert that his Confrontation Clause rights were violated when Khiry Hayward was not called to testify. Scale thus waived this claim. See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("[h]abeas claims that are not raised before the district court in the petition are not cognizable").

Even assuming *arguendo* that Scale had timely raised this claim, he cannot excuse his procedural default. Judge Lloret found that because Schmidt's testimony regarding Khiry Hayward's statement did not violate Scale's Confrontation rights. (Doc. No. 21 at 15.) I need not reach this issue because Schmidt's testimony was not prejudicial under the second Strickland prong. See Preston, 902 F.3d at 377 (suggesting that a less-clear case of deficient performance might require more proof of prejudice to excuse a procedural default); Cruz-West v. Superintended Fayette SCI, 855 F. App'x 85, 88-89 (3d Cir. 2021) (not reaching the deficient performance

7

Strickland prong in determining whether to excuse a procedural default under Martinez because there was no reasonable probability of a different outcome under the second Strickland prong).

Had Schmidt's testimony regarding Khiry Hayward's statement been excluded, the jury would nonetheless have heard: (1) from Ms. Hayward that Mr. Patrick had been in a fight at 15th and Leigh, but that she did not know who was involved in that fight (N.T. Apr. 14, 2015 93:2-3); and (2) from both Ms. Alice Robinson (who loaned her car to Scale) and Schmidt that Scale and his codefendant were from the area of 15th and Leigh. (N.T. Apr. 15, 2015 222:11-223:2; N.T. Apr. 16, 2105, 229:2-5). Accordingly, even without Schmidt's testimony that the victim fought with "Fees," who was never identified, the jury would still have considered whether that fight involved Scale. Counsel would still have argued during closing that the Commonwealth was unable to prove any connection between Scale and the person with whom the victim fought. (N.T. Apr. 17, 2015 52-53.) Schmidt's testimony simply enabled counsel to argue that no one had identified Fees as Scale.

Schmidt's testimony thus underscored a weakness in the Commonwealth's case. Plainly, Scale cannot show the "reasonable probability of a different outcome" had that testimony been excluded. Accordingly, I will overrule Scale's objection.

**C.     "Turf War"**

Detective Schmidt testified that Scale lived "right in that area of 15th and Lehigh." (N.T. 229:4-5.) In closing, the Prosecutor argued that Scale and Newman "acted in a conspiracy," requiring the jury to find that "there was an agreement to act and then there was an overt act" and that "in this particular case, you have these two guys who have known each other, who grew up in the neighborhood, decide they're going to take guns, get in a car, drive over 4 miles across town, and shoot an unarmed man on his porch." (N.T. Apr. 17, 2015 136:13-137:2.) Scale originally

argued counsel should have objected to the Prosecutor's closing because it implied that the shooting was the result of a "turf war," an inference unsupported by the evidence. (Doc. No. 1 at 44.)

Judge Lloret ruled that the Prosecutor was merely arguing that Scale and his codefendant Newman knew each other, not that Scale was part of a "turf war." (Doc. No. 21 at 18.) Scale objects, arguing that the closing argument violated his due process rights because the Commonwealth knew that there was no evidence that Scale "was in anyway involved in the fight but that did not stop [it] from making that argument." (Doc. No. 22 at 7-8.)

Scale has cherry-picked statements from the closing in an effort to show that the Prosecutor sought to make an impermissible inference. Scale urges that the Commonwealth's statement "these two guys" refers to Scale and Fees. (Doc. No. 22 at 7.) Yet, when read in context, it is clear that the Commonwealth is referring to Scale and his codefendant. (See N.T. Apr. 17, 2015 136:13-23.) Scale's argument that counsel ineffectively failed to object to the Commonwealth's argument is meritless.

In his objections, Scale also cites for the first time a portion of the Prosecutor's closing that the shooting occurred because the victim "kicked someone's ass at 15th and Lehigh," and that "these guys didn't want to be disrespected." (N.T. Apr. 17, 2015 106:8-16.) Scale's counsel objected but was overruled. (Id. at 106:17-107:2.) Although counsel failed to object a second time during closing when the Prosecutor again referred to the fight, that failure does not amount to ineffectiveness. See Middleton v. Roper, 455 F.3d 838, 580 (8th Cir. 2006) (trial counsel was not ineffective for failure to object after "he objected once during the prosecution's closing argument and was overruled"). Scale's argument that counsel ineffectively failed to object is thus meritless.

9

**D.     Scale's Right to Testify**

Scale originally alleged that trial counsel ineffectively: (1) failed to object to "the insufficient colloquy" related to Scale's right to testify; and (2) failed "to provide him with appropriate and adequate advice to make his waiver of his right to testify intelligent and knowing." (Doc. No. 1 at 42-46.)  The trial court conducted colloquies at both of Scale's trials to ensure he made a knowing, intelligent decision regarding his right to testify.  (N.T. July 10, 2014 65-67; N.T. Apr. 17, 2015 12-14.)  At his first trial, Scale confirmed that his trial counsel had advised him, answered all his questions, and discussed the "pros and cons" of testifying.  (N.T. July 10, 2014 65-67.)  At his second trial, Scale again confirmed that he did not wish to testify, that his trial counsel answered all his questions, and understood that, even though he chose not to testify in the first trial, he was free to testify during the second trial.  (N.T. Apr. 17, 2015 12-14.)

In support of the instant Petition, Scale filed an affidavit contradicting what he had twice told the trial court—that his counsel told him that he should not testify but gave "no explanation at all as to why he thought that."  (Pet. Aff. 1.)  Judge Lloret found that Scale had no right to a more substantial colloquy, and his bare allegations cannot overcome the lack of any evidence that trial counsel unduly influenced his right to testify.  (Doc. No. 21 at 19-20.)

Scale objects to Judge Lloret's finding that there is no specific right to a colloquy.  (Doc. No. 22 at 10.)   "Where the trial court has no reason to believe that the defendant's own attorney is frustrating his or her desire to testify, a trial court has no affirmative duty to advise the defendant of the right to testify or to obtain an on-the-record waiver of such right."  U.S. v. Pennycooke, 65 F.3d 9, 13 (3d Cir. 1995).  Regardless of the adequacy of the trial court's colloquy, Scale's counsel was not ineffective for failing assert a right that Scale did not have.  I thus will overrule his objection.

10

Scale also objects to Judge Lloret's finding that he has not shown that trial counsel unduly influenced his right to testify. (Doc. No. 22 at 11.) Counsel may be ineffective if he fails to advise the defendant of his or her right to testify. Pennycooke, 65 F.3d at 13. The PCRA Court found that the trial court "clearly and thoroughly explained that [Scale] had an absolute right to testify on his own behalf, and that decision to testify was his alone. Each time, [Scale] attested that he understood . . . but chose not to on his own accord." Commonwealth v. Scale, CP-51-CR-0001230-2013 (Pa. Commw. Ct. Mar. 29, 2018) (unpublished). I agree. "Solemn declarations made in open court carry a strong presumption of verity" but are not "invariably insurmountable." Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994) (quoting Blackledge v. Allison, 431 U.S. 63, 73-74, (1977)). Here, Scale twice confirmed that his lawyer answered all his questions, discussed the ramifications, and decided he did not wish to testify. (N.T. July 10, 2014 65-67; N.T. Apr. 17, 2015 12-14.) After previously stating in open court his counsel had gone over the "pros and cons of testifying," Scale cannot now challenge that he did not know why his trial counsel advised him not to testify. Scale's claim thus is meritless, and I will overrule his objection.

E.   **Medical Examiner**

Scale originally alleged that trial counsel ineffectively he failed to object to the medical examiner's hearsay testimony on Confrontation grounds. (Doc. No. 1 at 47-49.) After Dr. Edward Lieberman's cross examination concluded, the trial court asked him whether anyone performed toxicology testing. (N.T. Apr. 14, 2015 130:22-23.) The objection of Newman's counsel was overruled because the judge "want[ed] to know." (Id. 130:24-131:3.) Scale's counsel did not object. (Id.) Dr. Lieberman responded that although he did not perform the toxicology testing, the toxicology report "indicate[d] that there were no illicit substances in [the victim's] body." (N.T. 131:4-133:2.)

11

Judge Lloret found that this testimony did not prejudice Scale. (Doc. No. 21 at 22.) Scale objects, the jury "likely concluded that the toxicology testimony [] had to have some relevance and materiality otherwise the Judge would not have interjected herself into the questioning of the witness." (Doc. No. 22 at 13.) Yet, Scale does not explain how exclusion of this testimony could have changed the outcome of the trial. He does not allege that the victim's toxicology results were ever mentioned again during trial. In his closing argument Scale's counsel argued that the eyewitness misidentified Scale, the Commonwealth's timeline did not make sense, it had not provided any motive for Scale to shoot Mr. Patrick, and its physical evidence did not prove a link between Scale and the murder. (N.T. Apr. 17, 2015 30-56.) No one referred to the toxicology results in closing argument. (Id. 59-96, 104-143.) Plainly this testimony could not have affected the jury's verdict. See U.S. v. Jimenez, 513 F.3d 62, 79 (3d Cir. 2008) (evidence, even if improperly admitted, "had no effect on the verdict" because the Government did not rely on it to make its case.) Accordingly, I will overrule Scale's objection.

Scale also objects to Judge Lloret's "failure to reach and analyze the Confrontation Clause argument" because "he is entitled to review of the entire claim." (Doc. No. 22 at 11.) As I have explained, however, there is no merit to Scale's argument he was prejudiced the "failure" to object to the introduction of toxicology results. In these circumstances, any "Confrontation" violation arising from the toxicology evidence did not prejudice Scale. His procedural default is thus not excused. I thus will overrule Scale's objection.

### F.     Investigation of Forensic Evidence

Scale originally alleged that trial counsel ineffectively failed to conduct an appropriate investigation of: (1) ballistics evidence, (2) fingerprint evidence, and (3) DNA evidence. (Id. at 49-52.)

At the time of the first trial, ballistics testing did not match the gun recovered from the car with the fatal bullet. A week before the second trial began, however, the Commonwealth produced a new report that identified the gun as the one used in the Patrick murder. (Id. at 49.) During his closing argument, Scale's trial counsel argued that the Commonwealth's ballistics results were suspect, that the Commonwealth lacked DNA and fingerprint forensic evidence from the firearm, and the Commonwealth never tested Scale for gunshot residue. (N.T. Apr. 17, 2015 53-55.)

Judge Lloret found this ineffectiveness claim meritless because: (1) Scale has not identified an expert who would have challenged the Commonwealth's evidence or what information that expert would have provided; and (2) Scale's trial counsel used the deficiencies in the Commonwealth's physical evidence "in an attempt to cast doubt on the Commonwealth's theory of the case." (Doc. No. 21 at 25-26.) Although Scale now states that he has "consulted with an expert who would need to review the actual physical evidence," he does not identify this expert or the expert's field. (Doc. No. 19 at 21.) Scale does not even provide a basis to determine that this expert disagreed with any of the forensic evidence presented at trial. Scale's "vague and conclusory allegations that some unspecified and speculative testimony might have established his defenses" does not make out trial counsel's ineffectiveness. Zettlemoyer v. Fulcomer, 923 F.2d 294, 298 (3d Cir. 1991). Accordingly, I will overrule his objections.

### G.     Evidentiary Hearing

Scale requested an evidentiary hearing on his first, third, and fifth ineffectiveness claims. (Doc. No. 1 at 40, 46, 50.) Judge Lloret deemed a hearing unwarranted because Scale failed diligently to develop the factual record in state court, and because the existing record plainly refutes his allegations. (Doc. No. 21 at 27.) Scale objects, arguing that PCRA counsel was so deficient that due process requires a hearing. (Doc. No. 22 at 14.) Scale also argues that disputed

issues of material fact remain that warrant an evidentiary hearing. (Id. at 15.) I disagree.

I am "permitted . . . though not required, to grant an evidentiary hearing" only if Scale's "case falls within the very limited circumstances listed in section 2254(e)(2)(A) and (B)." Goldblum v. Klem, 510 F.3d 204, 220-21 (3d Cir. 2007). In those limited circumstances, the decision to hold an evidentiary hearing is "left to the sound discretion of district courts." Id. at 221 (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)). An evidentiary hearing is unnecessary to resolve "issues that can be resolved by reference to the state court record." Id. at 220 (quoting Schiro, 550 U.S. at 474). As I have discussed, the state record refutes Scale's allegations. I thus will overrule Scale's objection.

### H.     Certificate of Appealability

Scale challenges the Judge Lloret's conclusion that no certificate of appealability should issue. (Doc. No. 22 at 15.) "A certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy § 2253(c)(2), "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons I have discussed, reasonable jurists would not debate the correctness of my ruling or of Judge Lloret's Report. A Certificate of Appealability will not issue.

### IV.    CONCLUSION

**AND NOW**, this 14th day of February, 2022, upon consideration of the pleadings and record herein, and after careful review of Judge Lloret's Report and Recommendation (Doc. No. 21), Petitioner's Objections (Doc. No. 22), Respondents' Response (Doc. No. 28), and all related filings, it is hereby **ORDERED** that:

1. The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) is **DENIED with prejudice**;

2. Petitioner's objections to the Report and Recommendation (Doc. No. 22) are **OVERRULED**;

3. Judge Lloret's Report and Recommendation (Doc. No. 21) is **APPROVED** and **ADOPTED**;

4. There are no grounds to issue a certificate of appealability; and

5. The Clerk of Court **SHALL** mark this case closed for statistical purposes.

**AND IT IS SO ORDERED.**

 _/s/ Paul S. Diamond_
Paul S. Diamond, J.